This is for the first time in seven years that we have sat in Delaware and I especially want to extend formally my thanks to Chief Judge Sleet for allowing us to use his courtroom not only today but for tomorrow and Wednesday. It is truly much appreciated. We have two cases this afternoon. The first case is Hartmann v. Warden Thomas Carroll et al., number 13-1953. Ms. Wen? Yes, sir. And then you're supervised by Ms. Daly? I'm sorry, Mr. D'Alessio? D'Alessio, yes. And then Mr. Trexler and Ms. Scott. Is that correct? Thank you. Come on right up. Thank you and may it please the court. My name is Tian Wen and I'm here on behalf of Mr. Hartmann, the appellant in this matter. With the court's permission, I'd like to reserve three minutes for rebuttal. That's fine. Thank you. This case is about a district court that had a duty to inquire as to an unrepresented litigant's competence. But in undertaking that duty... What additional would you have had the district judge do here? Here there are various things that Judge Robinson could have done. One of the things that she could have done was to bring in Mr. Hartmann to ask him questions. While the court relied on its experience with Mr. Hartmann in coming to the determination that Mr. Hartmann was competent, that was actually based all on paper filings that Mr. Hartmann had done. Now the court had observed Mr. Hartmann on how many other occasions? From the record, it appears that Mr. Hartmann never appeared before the court. However, the court seemed to be basing its opinion on the paper filings that Mr. Hartmann had made. Additionally, the court could have looked to see if Mr. Hartmann had been involved in any other determinations, adjudications of his competence, and there that would have led us to the state court proceedings before Judge Young of the Delaware Superior Court. The great problem that is Achilles' heel is that there were possibly documents that could relate to his competency, but he refused, I think on four occasions, to sign the HIPAA form. Yes, Your Honor. It's true that he refused to sign the HIPAA form, but that really goes to show just how Mr. Hartmann wasn't able to meaningfully participate in any sort of evaluation of his competency. One of the problems with relying on Mr. Hartmann's failure to sign the HIPAA agreement is that the court was relying on Mr. Hartmann, whose competency the court was supposed to evaluate, to bring to the court the documents that the court needed to evaluate his competency. Moreover, the HIPAA agreement would have turned over documents to the appellees and not to the court. If the court had brought in Mr. Hartmann, asked him questions, and found that he had been committed to a psychiatric facility or asked him to sign a form, that would have turned over those documents to the court. Although that evaluation of the psychiatric facility didn't appear to help him all that much, did it? Your Honor, we're not sure what exactly were contained in those mental health evaluations, and that's another problem that we have here in this case. The appellees filed the letter with their subsequent summary judgment motions, and the court simply used that document to support its earlier finding of Mr. Hartmann's competence. However, that letter was written by a state attorney who had called one of three doctors who had evaluated Mr. Hartmann, and the letter itself doesn't contain the mental health evaluation. It's simply a hearsay summary of what the attorney was told by one of three doctors who had evaluated Mr. Hartmann. Once the court was aware that Mr. Hartmann was committed to a psychiatric facility and had several evaluations... But again, he wasn't committed, he was there for an evaluation, and again, you're right, it's hearsay. But the evaluation appeared not to show, give any indication to the examining person that there was a question as to Mr. Hartmann's competency. I mean, what was in the record that you... Well, what the letter said that it wasn't treatable, now that doesn't necessarily mean he's competent or incompetent. There are incompetent people who are not treatable. Correct. Yes, Your Honor, and that's true, and that's, again, one of the problems here is that we don't actually know what was contained in the mental health evaluations. Perhaps he didn't have a treatable psychiatric issue, but that issue nevertheless may have hindered his ability to represent himself in court, and that may weigh on... What is in the record? What we have in the record, the only medical document that we see in the record is a chart that lists the medications that Mr. Hartmann was given while at the facility, while at the James T. Vaughan Correctional Center. And that was submitted by the apologies in support of their summary judgment motions, not to assist the court with its finding of Mr. Hartmann's competence. So really, that gives us a partial list of the medications that Mr. Hartmann was given, and it includes items such as aspirin and metamucil. It certainly didn't go to Mr. Hartmann's competence and did not provide the court with any sort of information as to whether Mr. Hartmann was competent. The only thing that I could find was a very short letter of Dr. Zame's, and then there was in some acronym that conceivably might have related to medical health or mental health, but I'm not sure. What else is there? The point is that if there isn't a whole lot, then he's got to sign a release, does he not, to allow others? Well, Your Honor, it's true that there really isn't anything here on the record that tells us about Mr. Hartmann's competency, and that really is one of the problems here. The Third Circuit in Powell, a previous appeal before this court, specifically stated that Dr. Zame's letter was a type of documentation that was enough to trigger the court's duty to inquire as to Mr. Hartmann's competence. So the question here isn't whether that letter suffice to trigger any sort of duty. Here, the district court had a duty to inquire as to Mr. Hartmann's competence, but it didn't take any further steps to evaluate his competence. When did that duty kick in? Well, the Powell court explained that the duty kicks in once there is verifiable evidence of a mental competence issue, either from a doctor, as we see here, from Dr. Zame's, or if he's been adjudicated incompetent by another court. And is either one of those, does either prong exist here? Yes, Your Honor. It was explicitly recognized in Powell that Dr. Zame's letter was enough to trigger that duty. Here, the question isn't whether a duty was triggered, but whether the district court took enough steps once that duty was triggered. And while the Third Circuit hasn't really explained the form or degree of process required once the duty to inquire is triggered, the courts in this district have all gone beyond simply looking at the paper record when evaluating a litigant's competency. For example, one court has stated that it's important to get a mental health evaluation so that the court has all of the facts necessary to determine whether a litigant is competent. The defendants here, particularly the Warden Carroll, were the custodians of Mr. Hartman. Did they have any duty to inform the court of their knowledge of psychiatric evaluations that had been done while Mr. Hartman was in their custody? Well, Your Honor, as part of the competency determination, the district court did ask that both sides brief the issue of Mr. Hartman's competency. But apart from sending the HIPAA form that they wanted Mr. Hartman to sign... Well, but did the state, as custodian, did they have any duty to say to the court, he's in our custody and we know that he has been sent to the Delaware Psychiatric Hospital? Once the district court asked both sides to assist with the competency determination, arguably the state should have been able to produce records that showed at least that Mr. Hartman had been transferred out of the Vaughn Correctional Facility and sent to the Delaware Psychiatric Center for an evaluation. In fact, the letter that we see here in the record demonstrates that even without the HIPAA consent form, the appellees here were able to assist the court in finding documentation that would help the court evaluate Mr. Hartman's competency. Now, the letter wasn't actually submitted to the court until the subsequent summary judgment stage, so six months after the court had already determined that Mr. Hartman was competent. But at that point, the court would have been surely on notice that in its competency evaluation it had missed this entire parallel state proceeding in which the court had ordered multiple evaluations of Mr. Hartman's mental health. And the court could have at least asked the appellees here whether they were able to obtain any other documentation or whether they had any other information relating to the mental health. Is it that information for which you would not sign the HIPAA release form? I'm not sure to what extent those two forms would overlap, but since Mr. Hartman didn't sign the HIPAA release, but the appellees submitted the letter in conjunction with their summary judgment motions, it seems that there are things that the appellees here could have done to assist the court in obtaining documents to assess Mr. Hartman's competency. Something else that the court here could have done that would have shown that Mr. Hartman was evaluated for mental health issues was to look at the dockets in the Delaware State Courts to see if Mr. Hartman had been adjudicated before any judges there. And again, the court failed to do any of those things. It didn't order a mental health evaluation. It didn't bring in Mr. Hartman to ask him any questions. And it didn't hold any evidentiary hearings to help the court assess Mr. Hartman's competence. And that's really the problem here, is that Powell v. Simmons says that once a court has verifiable evidence that a litigant is potentially incompetent, it's under a duty to evaluate his competence. And it can't be that the court can simply rely on the record that triggered that duty in the first place. Well, it's verifiable evidence of treatment for a mental health condition, not an evaluation. Yes, Your Honor. Where was the treatment? Well, the treatment, what triggered the duty here in Mr. Hartman's case was a letter from Dr. Zanes. And she said that Mr. Hartman was under her care for depression. And so she stated that she didn't believe that he was competent to represent himself. The letter is what, all two sentences? Yes, Your Honor. And it's true that that letter perhaps didn't go into a lot of detail. But again, the Powell court found that that was enough to trigger the duty. Another thing that the court could have done if it felt that Dr. Zanes' letter was too conclusory was to ask Dr. Zanes what assessments she performed, how she came to the conclusions that Mr. Hartman was not competent. However, the court did not pursue that avenue of inquiry. Let's say you're in our position. And you have a Powell case that's already been decided. Can a litigant whose competency is in question ever be responsible for assisting and providing relevant evidence of competency? Your Honor, I think that a litigant can be helpful. But I think that once the duties... That can be held responsible for assisting. I don't think that the court should rely solely on the person whose mental competency the court is supposed to inquire to come to a determination as to whether that litigant is competent. And again, this wouldn't apply to any litigant who comes into court and asks the court to appoint counsel. Here, there's a standard that needs to be met in the first place, and that's the Powell standard. Not every litigant has a letter from their psychiatrist stating that they're not competent. Not every litigant has been committed to a psychiatric facility for evaluation. And in those very few instances where a litigant has been able to show that and overcome the Powell standard, the court should do something more than relying simply on the paper record or on the litigant whose competency is in question to come to a determination as to his competence. But is counsel trying to get that information that they're not that might help him? It might show that, in fact, he was being treated if that was the case for a mental health condition? Well, that information was never brought before the court, and as far as the record... But because he wouldn't even cooperate with his counsel, would he? Well, Mr. Hartman is proceeding pro se, so he was really making those determinations first thought. He was pro se throughout? Yes, Your Honor, in this case. Okay. I see that my time is almost up. I'd like to reserve the remainder of my time for rebuttal. That's fine. Thank you very much. Thank you. Mr. Trexler. Good afternoon, Your Honors. Nathan Trexler on behalf of Appellee Iyamah Chooks in this matter. She was the medical provider. May it please the court, I'd like to start with what counsel for Mr. Hartman said that the district court could have done in this case. But the question before this court is not what the district court could have done. The question is what the district court must have done, such that failure to do so would amount to an abuse of discretion here. And I'd like to start by discussing and following up with Mr. Hartman's counsel's discussion of this letter to Judge Young that was submitted by the state appellees when briefing their motion for summary judgment. That letter tells us essentially three things. It tells us that at one point in time, Judge Young wanted the appellant evaluated for certain reasons. And if you look at the letter to Judge Young, the subject line says it's in regards to a VOP, a violation of probation. And if you look at the state court docket, as appellant suggests, you must hear, what you'll see is that Judge Young really wanted appellant evaluated for purposes of sentencing. He wanted him evaluated. Specifically, he references an AIMS assessment. And that assessment helps the court determine conditions of probation because it tests sexual offenders' reaction to certain things. You're going straight to the merits, and that's fine. I have no problem with that. Except I thought you made an argument that the pro se notice of appeal didn't appeal the March 2013 order. Yes, Your Honor. I can go back to jurisdiction. In this kind of case, with somebody appealing pro se, why isn't the March 13 order, in effect, included within the appeal from the August 2012 order? I'm sorry. The appeal referred only to the March 2013 order and did not appeal to the prior order from August 2012. Correct, Your Honor. And I think what I would say to start is that appellant had already demonstrated that he understands how to appeal from the district court. He had done it before this court had heard his appeal in Palby-Simmons that was consolidated with this matter. He knows what he's doing. He knows very specifically how to draft his notice of appeal. And in this case, he very specifically took appeal from the March order. But the March order can relate back to the August 2012 order if, among other things, it's closely related. There was an intention to appeal the unspecified order, and that's apparent. And the opposing party is not prejudiced. Yes, Your Honor. So, I'm sorry. These are slew of mine, and I don't really have a problem with the first problem, which is the connection issue. This court in the District of Delaware previously said that an unspecified order is connected to a specified order if the legal bases for each order are related. So, for example, in Powell, the case that was consolidated with this case previously on appeal to this court, the appellant in Powell had taken appeal from the magistrate judge's report and recommendation and did not take appeal from the district court's adoption of that report and recommendation. It's very clear that those two orders are connected. In another matter where an appellant has taken appeal from a denial for request for reconsideration, this court has found that that order is connected to the underlying order of dismissal because they're based on the same legal premise. Well, if we look at the order of March 13, 2013, paragraph number 3 refers to plaintiff's motion for a mental health evaluation, evidentiary hearing, and for counsel. Now, granted, this is a second petition for mental health evaluation, but, again, it's raising this whole issue which was dealt with in the 2012 order, and doesn't it indicate that there is a continuing concern on the part of Mr. Hartman about the mental health evaluation and that the final appeal should incorporate the earlier reference denial? I would agree, Your Honor, that the fact that he had filed that motion for a mental health evaluation and for counsel and for a competency hearing demonstrates his intent to continue to make his issue of competency the main issue in this litigation. But that does not answer the first element of Suleyman, which says they must be connected. But doesn't it show a connection? I mean, doesn't it show a continuing concern, which is essentially what the connection would be? Well, I think the barest thread of the connection is that the district court was obligated to address the fact that he filed this motion before the matter of summary judgment was decided, so it needed to be denied as moot. That is such a minimal connection. I don't think that's what this court in Suleyman had understood to be a connection when you're taking appeal from a specified order. Didn't we say in Tabron, in the same situation, we said that the petitioner was arguing that the summary judgment motion could not stand because it would have been different if he'd had counsel, and that's what he did argue in his brief. Correct, Your Honor, and I think when you consider that holding in Tabron, at the very least that would only go to the matter of the request for counsel. It would not go to the Rule 17c issue. That's never been decided by this court. What Tabron said was, obviously, the order granting summary judgment would be vacated if it was still an issue about abusive discretion regarding the motion for appointment of counsel, but that's not the Rule 17 issue here. In Tabron, I thought, in effect, part of the appeal was that the denial of counsel adversely affected the ability to produce enough evidence so that he could have rebutted summary judgment, and then you look at this case, it seems as if Hartman is at least implicitly arguing that summary judgment is only entered because he wasn't confident, so that would seem to be enough for a connection. Well, again, Your Honor, I think what Tabron says is when you're talking about the appointment of counsel, not the appointment of a guardian ad litem under Rule 17c, that's really the appointment of counsel. Here, there's no connection between the competency issue and the appointment of a guardian ad litem under Rule 17c and the ultimate order granting the motions for summary judgment. If I may, I'd like to... But if he's claiming that, at least implicitly, that summary judgment would not be entered against him if he were found to be incompetent and, therefore, someone would be appointed to take his place before the court, that would seem to be pretty darn close, in this case, to what you saw in Tabron. It would be close, Your Honor. I would just say it would be a matter of first impression for this court to hold that an ongoing issue under Rule 17c, solely made ongoing by the appellant himself, is enough to carry the matter forward when the district court had turned all the party's attention to the dispositive motions. I mean, it's very clear that the district court here issued its final order on the issue of competency. No new information had been presented to Judge Robinson indicating that the issue of competency was still, in fact, an issue. It had been decided. That doesn't stop a party from continuing to file motions, particularly a pro se party, who, from the very outset of this litigation, had requested counsel numerous times. That doesn't stop that party from continuing to want it to be an issue. But we know that he knows how to file a notice of appeal to this court. He had done it before. And even if he didn't understand the concept of the fact that it would be an interlocutory order, you would think if he wanted to appeal the competency order in August of 2012, he would have done so. The district court concluded in applying the counsel as opposed to the competency rule that this was a case in which no expert was required, expert testimony. So we didn't need to worry about his ability to put that across effectively. Correct. Now, as I understand it, he's not arguing that he didn't get any medical treatment for his problem. He's saying that he got inadequate, unreasonable treatment for his problem. Correct. And he's, of course, saying that he has a serious medical condition, serious medical need. Now, how can you effectively decide either of those issues without expert testimony? Well, I think, one, it's important to draw the distinction. You know, it doesn't make an undue or a deliberate indifference claim to be unsatisfied with your treatment. That's not a deliberate indifference claim. And that's a competence claim. We don't even really know what the condition is and why. Excuse me. We don't know what the condition is that he is saying was serious and why the treatment was inadequate. And I think he, on his own, was unable to vocalize exactly what it was that was inadequate. And he needed at least a lawyer to determine if expert testimony is required. Now, I used to defend medical malpractice cases in this state for many years. And I know that one of the requirements for a plaintiff in a medical malpractice case is you have an expert witness to testify. Did this treatment conform to the applicable standard of care? And is Mr. Hartman in that same situation? And is he, in effect, precluded from pursuing his claim if he can't get an expert witness? I don't believe so, Your Honor. And I think that's because this claim is different from a medical malpractice claim. He's essentially saying, I didn't get this care. I disagreed with my medical provider. But that is not enough to make out a deliberate indifference to a serious medical need claim. And we do know what the medical need was. It was hypothyroidism. And the health care records before the district court showed that he was treated for that condition. And I would submit that the district court was correct in saying, in this particular case, and this court has held previously, that you don't need expert opinion in these cases. Sometimes you may. But in this matter, the district court decided it wouldn't be necessary. But under Tobrome, even if there's one factor, let's say, for example, that that factor weighed in favor of a palantir, that's just one factor. And the district court in this case weighed the factors and has given broad discretion to do so and decided that over and over again, Mr. Hartman clearly was able to prosecute this case on his own, make rational arguments, and cited this court's take on him as well, that he could make legal arguments and was impressive in how he put his points before the court. And I don't know if this is a question for you or it should be answered by Ms. Scott. In the records, there's a number of places where the letters M-H appear. Do you know what that is? For example, I think it's on Joint Appendix 608. There's at least one place. Do you know what that stands for? I do not, Your Honor. I'll leave it to Ms. Scott. Let's segue to Ms. Scott then. Okay. Thank you very much. Thank you, Your Honor. Good afternoon, Your Honors. My name is Debra Scott, and I represent State Appellees Carroll and Pierce in this matter. And with me today is my co-counsel, Dennis Beebeck. You're welcome. Maybe you can help me with it. I think it's on pages 608 and 619, at least two spots that we've seen that. Do you have any idea what M-H stands for? The copies aren't very good. One could guess that it stands for mental health, and that's why I'm asking the question. M-H-M would be the mental health provider. I don't know if that's what that says. It says R-N-H-M, I believe, and I don't know what that is. Okay, because an M-H referral sounds like a mental health referral on 608. 608. And that would be on the top line, Your Honor. On the right-hand side, it says routine. I don't have the answer to that. If you want to submit something afterwards as to what that stands for, that would be fine. Yes, I can find out what that means. Okay. Your Honor, we ask the court to uphold the district court's decision that Mr. Hartman is competent under Rule 17C. The district court did not abuse its discretion in deciding the issue of Mr. Hartman's competency. I guess the layperson's take on it, just through your blink responses, if a letter from a state prosecutor is submitted, weren't you at least aware that Mr. Hartman's mental health had been questioned or there was something about it that caused an evaluation to take place in a state criminal proceeding? And if that's the case, why not just investigate? Why shouldn't the court investigate? Well, you're officers of the court. You know that the court is interested in the subject matter. Yes. And so if you are the custodian of Mr. Hartman, did you not know that he spent time at the Delaware Psychiatric Hospital? Isn't it your responsibility as an officer of the court, when the court has asked about this subject, to present to the court the relevant information that you have? I understand that the district court did not make that inquiry to the state appellees. However... Well, the district court indicated to you that it was interested in this. Yes. As officers of the court, don't you have a responsibility to find out what exactly is relevant and pass that information on to the judge? Yes, Your Honor. In this case, Mr. Hartman's admission to the Delaware Psychiatric Center was not... There's no evidence in the record that he was there to be evaluated for his competency. Was he in your custody when he was admitted? Yes, he was. Well, didn't you have a responsibility at least to transmit that information to the court? And I believe that the attorney in this case did provide information to the court that Mr. Hartman had been evaluated and returned to the Department of Correction because there was no psychiatric reason for him to be there and routinely... When was this transmittal made? When was the transmittal made? It was made in the summary judgment briefs. Summary judgment brief as to Rule 17c or the summary judgment on the case? Summary judgment on the case, Your Honor. Well, isn't that a little late? I mean, the Rule 17c argument is a time when it's relevant and you knew that this had happened. Don't you have a responsibility as officers of the court to bring this information to the attention of the court? I agree that the attorney in the case should have submitted something to the district court regarding the competency issue. As I understand it, at that point Mr. Hartman had refused to provide a HIPAA authorization so that the parties could get his mental health records. But that doesn't stop you. Correct. However, the document that triggered the district court's duty of inquiry under Rule 17c was Dr. Zames' letter. Dr. Zames is in private practice. Mr. Hartman treated with Dr. Zames after he had been released from custody. She's a private mental health provider in Sussex County. The Department of Correction wouldn't have been able to get those records from Dr. Zames without a HIPAA authorization. So you submitted, your side submitted the letter from the state prosecutor, is that correct? That's correct. But the letter is based on what is clearly hearsay. If that's the case, don't you need to back it up with something that shows that there was some type of evaluation done and have the person who did the evaluation actually submit something rather than the state prosecutor saying here's what I was told? Your Honor, I believe that that document was submitted to show that Mr. Hartman had not been deemed incompetent. And the standard that this court set forth in Powell as to what is verifiable evidence would be verifiable evidence from a mental health provider that Mr. Hartman was treating or had been treated for a mental illness that rendered him incompetent. There's no evidence in the record that he had ever been treated, determined to be incompetent, and Dr. Zames' letter doesn't make that connection between her treatment of him and his ability to represent himself in this matter. It goes to his competency. What you've got is a, obviously the prosecutor wants to have a finding that there need not be anything further with regard to an investigation pertaining to competency. And so this letter is actually fairly self-serving. Why not bring the person in who actually did the evaluation and have that person either testify or you could have a deposition, whatever you need, some type of discovery with regard to the person who actually did the evaluation? In the district court matter? In the district court. Yes, Your Honor. Well, the district court was not required to convene a competency hearing to make any inquiries outside of the record. She did not use her discretion by relying on the evidence that she had before her, which was the medical records that indicated that Mr. Hartman wasn't even being treated, in the Department of Correction at least, for a mental health issue. She also had ample experience with Mr. Hartman, not only in this case, but in other civil lawsuits that he had filed and with a petition for writ of habeas corpus. So she had all of that information before her to weigh against a three-sentence letter from Dr. Zame, which this court agreed was conclusory and therefore no other information. She didn't have to go outside of that record to make that determination of competency. Your position is that when this case was before the court, the court's opinion was saying that Zame's letter put a duty on the court, but you say the duty is limited to specifically looking at the question of competence and deciding that issue on the basis of the record before the court and making a finding. Now, the other side is going to say it's not just a duty, it's a verifiable evidence. If you have verifiable evidence before you, one would think that you had to verify it or you should verify it by, for example, asking Zame what he did and what his opinion was. Do you have any authority for the proposition that the duty is limited to determining the issue before the record as it then existed? Your Honor, this court in Powell held that the district court should have the discretion to determine the degree and the form of that inquiry and that they shouldn't be required to go outside the record if there's evidence in the record that they can use to rebut Dr. Zame's three-sentence letter. In addition, the court directed that the district court could look to its own experience and that's exactly what the court did here. The district court didn't abuse its discretion by relying on the medical records that it had and its own experience. Had Mr. Hartman provided a HIPAA authorization and those mental health records could have come in, certainly that would have been helpful, but however, Mr. Hartman instead stonewalled the process and continued to make the circular argument that I'm incompetent and therefore I cannot prove that I'm incompetent. And in this situation, even if, as the appellant suggests, that the district court brought him in for a competency hearing, that argument probably would have continued. I'm not competent. I can't participate in this hearing. In addition, the district court judges and the psychiatrist to seeing Mr. Hartman versus seeing how he responds, communicates in documents would have been more instructive to the court and necessarily follow to its logical conclusion if the district court would be required to have a hearing Every time an individual made the circular argument about his incompetency, the district court would always have to appoint counsel just for the competency issue alone. Although Mr. Hartman was actually part of, his appeal was consolidated with that of Powell. Yes, it was. And Mr. Powell, different from Mr. Hartman, was adjudicated to be incompetent and Mr. Hartman has never been adjudicated as an incompetent. He was merely At this point, we're not even there. The question is what do you need to do to make sure of the determination that you do make and when do you need to have an investigation done on your own because that's, in effect, what Powell's about. When does the court need a sua sponte look at it? The court sua sponte has a duty of inquiry under Rule 17c when there's verifiable evidence that an individual could be incompetent and the court specifically adopting the standard of Ferelli said that that verifiable evidence that a court could have used its discretion if it did not consider verifiable evidence such as an adjudication in another court or by a public agency, that was not the case.